Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE FLICK, *individually and on behalf of all those similarly situated*,<br><br>*Plaintiff*,<br><br>*v.*<br><br>MARS PETCARE US, INC. dba Nutro Pet Foods, *a Delaware corporation,*<br><br>*Defendant*. | No. '26CV2142 CAB BJW<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Nicole Flick ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against Mars Petcare US, Inc. dba Nutro Pet Foods ("Nutro" or "Defendant"), alleging that its Nutro Natural Choice dog foods ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they contain synthetic preservatives, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1. Plaintiff Nicole Flick is and at all times relevant was a citizen of the state of California, domiciled in San Diego, California. She purchased the Products on or about March 19, 2024 from Amazon.com (Order No. 114-6285740-4718633).

2. Defendant Mars Petcare US, Inc. dba Nutro Pet Foods is a Delaware corporation with its principal place of business in Franklin, Tennessee. On information and belief all decisions regarding formulation and labeling of the Products are made at this principal place of business.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to at least one Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to at least one Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

**FACTUAL ALLEGATIONS**

15. The Products' labels prominently represent that they contain "No Artificial Flavors, Colors, or Preservatives":




16. This representation is false. Nutro Natural Choice dog foods contain both citric acid and mixed tocopherols. Citric acid and tocopherols are both artificial preservatives:


CALORIE CONTENT (CALCULATED): 3631 KCAL ME/KG, 357 KCAL ME/CUP

Ingredients

Chicken, Chicken Meal, Brown Rice, Barley, Oatmeal, Brewers Rice, Peas, Chicken Fat (preserved with Mixed Tocopherols), Dried Plain Beet Pulp, Natural Flavors, Potassium Chloride, Flaxseed, Salt, Choline Chloride, DL-Methionine, Chia Seed, Dried Coconut, Dried Tomato Pomace, Dried Egg Product, Dried Pumpkin, Dried Kale, Dried Spinach, Citric Acid (preservative), Mixed Tocopherols (preservative), Vitamin E Supplement, L-Ascorbyl-2-Polyphosphate (source of Vitamin C), Ferrous Sulfate, Zinc Oxide, Sodium Selenite, D-Calcium Pantothenate, Manganese Sulfate, Copper Sulfate, Biotin, Thiamine Mononitrate (Vitamin B1), Vitamin B12 Supplement, Vitamin A Supplement, Niacin Supplement, Riboflavin Supplement (Vitamin B2), Pyridoxine Hydrochloride (Vitamin B6), Vitamin D3 Supplement, Potassium Iodide, Manganous Oxide, Folic Acid, Rosemary Extract.

17. Plaintiff prefers to purchase foods free from artificial or synthetic ingredients and reviewed and relied on the label statement described above in making her purchase.

### A. The Citric Acid In the Products Is An Artificial Preservative.

18. While there is a natural form of citric acid extracted from fruit, this is not the form used by Nutro in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919,"[1] and the use of naturally produced citric acid in commercial foods is prohibitively expensive.

19. Virtually all citric acid used in U.S. commercial food—including that used in the Products—is produced through a multi-step industrial manufacturing process, not by extraction from any natural source.

20. The modern citric-acid process begins with glucose (typically derived from genetically modified corn) which is fermented with the industrial mold *Aspergillus niger* in large-scale bioreactors. The resulting fermentation liquor is then chemically precipitated with calcium hydroxide to form calcium citrate, which is subsequently reacidulated with sulfuric acid and crystallized into refined citric acid. Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid from the *A. niger* fermentation liquor, and frequently survive the reacidulation process in fragmentary form.

21. These steps—microbial fermentation, chemical precipitation, and acid-base reacidulation—are classic hallmarks of synthetic manufacture, not natural derivation. The citric acid in the Products meets this definition precisely: it is not extracted from fruit or any natural material but is manufactured from industrial feedstocks using fermentation and chemical processing.[2] Reasonable consumers would not understand ingredients derived from these processes as "natural."

---

[1] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL. REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/.

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/.

22. At 21 C.F.R. § 501.22(a)(5), federal law defines "chemical preservative" as any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

23. Citric acid manufactured using the *A. niger* method described above is not a type of common salt, sugar, vinegar, spice, or oil extracted from spices, nor is it a substance added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties. It is therefore a chemical substance.

24. The synthetic nature of citric acid made using this process has been repeatedly described in FDA Warning Letters and in other U.S. government and industry technical evaluations over the past several decades.

25. Further, as used by Nutro in its Products, these chemicals prevent or retard deterioration of the products. Therefore, citric acid is a "chemical preservative" in as defined in 21 C.F.R. § 101.22(a)(5).

**B. The Tocopherols In the Products Are An Artificial Preservative.**

26. Tocopherols are fat-soluble compounds that are present in Vitamin E. Tocopherols are naturally present in vegetable oils, nuts and seeds, and leafy green vegetables. They help to protect cells from oxidative stress and damage, i.e., they are "antioxidants."

27. There are four kinds of tocopherols: alpha, beta, gamma, and delta. Alpha tocopherols are the most biologically active and therefore are the ones primarily used in foods (whether human or animal).

28. There are, in turn, two kinds of alpha tocopherols: "d-alpha" and "dl-alpha" (also called tocopherol acetate).

29. D-alpha tocopherol is a natural tocopherol, typically derived from vegetable oils such as soybean, sunflower, rapeseed, or wheat germ oil.

30. By contrast, dl-alpha tocopherol is a synthetic tocopherol derived from petrochemical sources. Its manufacturing process involves the synthesis of trimethylhydroquinone (TMHQ) and isopropyl, which are both sourced from petrochemical feedstocks such as acetone, phenol, and isobutylene.

31. Acids are used to produce condensation reactions in the mixture, and the resulting liquid is purified with chemical solvents such as toluene, acetone, and ethanol.

32. Reasonable consumers would not understand ingredients derived from these processes as "natural."

33. Dl-alpha tocopherol includes both the "d" isomer of tocopherol, as well as the synthetic "l" isomer, and several other "serioisomers" that are the byproduct of the petrochemical substrates used to create it.

34. Synthetic dl-alpha tocopherol has a longer shelf life than natural d-alpha tocopherol and is more stable in various formulations, which often leads to its use in mass-produced dietary supplements, fortified foods, and cosmetic products, where shelf stability is a major concern.

35. In addition to their antioxidative effects, all tocopherols also work to preserve animal fats from oxidization, *i.e.*, going rancid. It is thus widely used in the pet food industry to preserve shelf-stable pet kibbles and treats that include high levels of animal fats.

36. Because Vitamin E deficiency is rare is domesticated dogs and cats, tocopherols are rarely used in dog and cat foods for vitamin supplement purposes. Its use is primarily to extend shelf life by preventing rancidity in animal fats.

37. There is a substantial cost difference between the two: natural d-alpha tocopherols cost between half again, to twice as much per kilogram as synthetic dl-alpha tocopherols. This price difference reflects differences between the two forms as to ease of manufacture and the price of substrates.

38. Reflecting this cost difference, virtually none of the tocopherols used as a preservative in pet foods is natural d-alpha tocopherol. Virtually all of these tocopherols are synthetic dl-alpha tocopherols.

39. Tocopherols are also not a type of common salt, sugar, vinegar, spice, or oil extracted from spices, nor are they a substance added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties. They are therefore a chemical substance as defined in 21 C.F.R. § 501.22(a)(5).

40. Federal regulations specifically list tocopherols as "chemical preservatives." *See* 21 C.F.R. § 182.3890. *See also* 40 C.F.R. §180.910. (describing tocopherol as "a synthetic, inert ingredient").

41. They are further defined as a chemical preservative by the American Association of Feed Control Officials ("AAFCO"), which has produced private-industry model regulations governing "natural" claims in pet foods.


AAFCO
Association of American Feed Control Officials
ABOUT ADVOCACY

Chemical Preservatives

- ascorbic acid
- benzoic acid
- butylated hydroxyanisole (BHA)
- butylated hydroxytoluene (BHT)
- calcium ascorbate
- citric acid
- ethoxyquin
- potassium sorbate
- sodium bisulfite
- mixed tocopherols

*See* https://www.aafco.org/consumers/understanding-pet-food/whats-in-the-ingredients-list/.

**C. Plaintiff Lacks an Adequate Remedy at Law.**

42. Plaintiff seeks restitution under the Unfair Competition Law and False Advertising Law in the alternative because she has no adequate remedy at law.

43. A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Product she received has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased products that she would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

44. Also, winning damages under the CLRA requires additional showings not required under equitable causes of action. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment, the UCL, and the FAL broadly prohibit "unfair" conduct.

45. By the same token, Plaintiff's common law claims require additional showings, compared to the unjust enrichment claim. For example, to prevail on the breach of warranty claim, Plaintiff needs to show that the statements that are challenged constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under an unjust enrichment theory. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL, FAL, and unjust enrichment claims are more certain than the CLRA claim.

46. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

47. The Products are sold for similar prices, using similar labeling and graphical design, and make similar misrepresentations regardless of flavor or type of Product. Plaintiff is therefore an adequate representative of a putative class despite not having purchased every flavor or variant of the Products.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

49. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

50. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

51. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

52. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

53. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

c. Whether Defendant breached an express warranty;

d. the proper amount of damages;

e. the proper scope of injunctive relief; and

f. the proper amount of attorneys' fees.

54. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

55. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

56. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

57. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

58. There are no defenses available to Defendant that are unique to the named Plaintiff.

59. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

60. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

61. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

62. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

63. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Plaintiff would like to purchase the Products and other products sold by Defendant in the future, but cannot currently

do so because she cannot rely on the Products' labelling, given the misrepresentations found on Defendant's Products. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

64. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of the use of artificial preservatives in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

65. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

66. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

67. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

68. Plaintiff is a "consumer" within the meaning of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

69. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

70. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

71. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the use of artificial preservatives in the Products.

72. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

73. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

74. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by its legal obligations and to give notice to all affected customers of its intent to do so. Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

75. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

**COUNT 2**
**UNJUST ENRICHMENT**

76. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

77. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur*. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

78. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by failing to disclose the use of artificial preservatives in the Products.

79. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

80. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

81. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

82. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

83. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed

appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

84. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**

85. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

86. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products were free of artificial preservatives.

87. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

88. The Products do not conform to the express warranty that the Products were free of artificial preservatives.

89. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' use of artificial preservatives; (b) they paid a price premium based on Defendant's express warranty; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "UNFAIR" CONDUCT**

90. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

91. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

92. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

93. Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose that the Products contain artificial preservatives.

94. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

95. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

96. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

97. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq*.

## COUNT 5
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "FRAUDULENT" CONDUCT

98. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

99. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

100. Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

101. Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose that the Products contain artificial preservatives.

102. As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

103. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

104. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

105. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "UNLAWFUL" CONDUCT**

106. Plaintiff reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

107. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

108. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

109. Defendant's business practices, as alleged herein, are "unlawful" because it fails disclose that the Products use artificial preservatives.

110. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

111. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

112. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

113. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

## COUNT 7
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *et seq.*

114. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

115. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

116. Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

117. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

118. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

119. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

120. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the statutes described herein and/or was unjustly enriched and/or breached an express warranty;

c. Ordering an award of actual, general, or compensatory damages, as permitted by law, in an amount to be proven at trial;

d. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

April 6, 2026